Gregory Lee VILLANUEVA, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–04–01070–CR, 01–04–01072–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 8, 2006.

Stephen A. Gustitis, Bryan, TX, for Appellant.

Stephen Christopher Taylor, Humble, TX, Renee Ann Mueller, District Attorney, Washington and Burleson County, Caldwell, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

TIM TAFT, Justice.

On May 22, 2006, appellant filed a petition for discretionary review. Pursuant to Texas Rule of Appellate Procedure 50, and within 30 days of the filing of said petition, the Court withdraws its opinion and judgments issued March 30, 2006 and issues this corrected opinion and judgments in their stead. *See* Tex.R.App. P. 50.

Appellant, Gregory Lee Villanueva, appeals from jury convictions on two counts of injury to a child.[1] *See* Tex. Pen.Code Ann. § 22.04(a), (b) (Vernon 2003). The jury assessed appellant's punishment at 50 years in prison on each count, to be served concurrently, and a $5,000 fine on each count. We determine (1) whether appellant's right against double jeopardy was violated because he was convicted on both counts of injury to a child; (2) whether the omission of the definition of deadly weapon constituted reversible error in regard to count I of the charge; (3) whether the evidence was legally sufficient to support an affirmative finding that a deadly weapon was used in the commission of the offense charged in count I and to show that appellant had a duty to act in the offense charged in count II; and (4) whether there was a fatal variance between the indictment and the proof. We affirm.

## Background

Appellant and his girlfriend, Amanda Dawn Legg, lived together and had a son, G.V., on June 5, 2003. G.V. was a healthy baby. On July 29, 2003, while Legg was bathing, she heard the bed frame squeaking "really loudly" in the bedroom where appellant was alone with G.V. When she next saw G.V., the corner of his lips were blue. She thought that he was cold and asked appellant to put socks on G.V. and to wrap him in a blanket. Legg left the bedroom, at which time appellant was again alone with G.V. for about 30 to 45 minutes. When Legg returned to the bedroom, she discovered that G.V. was limp, had bruises on his inner-right ear and face, and was making grunting noises. Legg told appellant that she wanted to take G.V. to the hospital because "something wasn't right," but appellant refused, saying that "if [Legg and appellant] took [G.V.] to the hospital that they would see the bruises and call in [Child Protective Services ('CPS')] and they would blame [Legg and appellant] for it." While they were arguing, appellant took G.V. away from Legg. Legg ran down the hallway to call for help, but appellant grabbed her by the arm and took her back to the bedroom.

The next morning, G.V. was grunting and running a high fever. Legg called the pediatrician, who instructed her to run a room-temperature bath to get G.V.'s temperature down before taking him to the Brenham clinic. Dr. Donald Draehn examined G.V. and observed that G.V. was experiencing periods during which he would not breathe and was making some bicycling movements. G.V. was life-flighted to the Children's Hospital in Austin because of this life-threatening condition. Dr. Keith Kerr, who was a pediatrician in the Intensive Care Unit ("ICU") at the Children's Hospital, examined G.V. G.V.'s injuries included retinal hemorrhages,[2] external bruising around his face, intracranial bleeding, and multiple fractured ribs.[3]

---

1. The appellate cause number assigned to count I is 01–04–01070–CR and the appellate cause number assigned to count II is 01–04–01072–CR.

2. Retinal hemorrhaging is bleeding in the back of the eye.

3. G.V.'s fractured ribs were a minimum of five days old to possibly three weeks old. Dr. Kerr testified that it is very difficult to frac-

G.V.'s shear injury [4] and the stroke that he suffered had been caused during the previous 24–hour time period. Dr. Kerr's assessment was that G.V.'s injuries were caused by shaken-baby syndrome. As a result of the injuries, G.V. had no brain activity and was intubated because he could not breathe on his own. G.V. ultimately died as a result of his injuries.

Appellant was charged with two counts of injury to a child. The first count charged him with intentionally or knowingly causing G.V.'s injury by shaking him with his hands or striking him with an unknown object. The second count charged appellant with injury to a child by omission in failing to seek medical treatment.

## Double Jeopardy

In point of error one, appellant argues that "[a]ppellant's right to be free from multiple punishment for the same offense was violated when the jury convicted him for injury to a child in both Counts I & II of the indictment."

Appellant contends that because he was convicted of two offenses arising under the same section of the penal code, against the same victim, on the same date, he should not be subjected to multiple punishments for the same offense. Under section 22.04 of the Texas Penal Code, a person commits the offense of injury to a child if he intentionally, knowingly, recklessly, or with criminal negligence, by an act, causes serious bodily injury to a child. TEX. PEN.CODE ANN. § 22.04(a). If the offense involves an omission, rather than an act, however, a person commits an offense only if he has a legal duty to act or if he assumed care, custody, or control of the child. *Id.*

§ 22.04(b). The Family Code provides that a parent has a duty of care, control, and protection of his or her child and a duty to provide medical care to the child. *See* TEX. FAM.CODE ANN. § 151.001(a)(2), (3) (Vernon 2005).

Double jeopardy is the principle that a person shall not be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Texas Constitution provides similarly: "No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction." TEX. CONST. art. I, § 14. These prohibitions protect against (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Ex parte Kopecky*, 821 S.W.2d 957, 958 (Tex.Crim. App.1992). When a defendant is subjected to a single trial, only the third aspect of the protection against multiple punishments is involved. *Ex parte Herron*, 790 S.W.2d 623, 623–24 (Tex.Crim.App.1990).

For double jeopardy purposes, "[t]he same offense means the identical criminal act, not the same offense by name." *Luna v. State*, 493 S.W.2d 854, 855 (Tex.Crim.App.1973) (holding that sales of heroin three months apart were not one offense); *see Ex parte Goodbread*, 967 S.W.2d 859, 860–61 (Tex.Crim.App. 1998) (holding that 15 separate sexual offenses committed between June 10, 1990 and April 1, 1994 were not one offense). In *Luna*, the Court of Criminal Appeals commented on the possibility that, al-

---

ture a baby's ribs because the bones are soft and that typically the way that a rib is fractured in a baby is by squeezing the baby in a severe manner.

4. A shear injury is pin-point bleeding inside the brain.

though two offenses could appear to be covered by a single charge, they could still be two entirely separate offenses. *See Luna*, 493 S.W.2d at 855. In declaring that "[t]he same offense means the identical criminal act, not the same offense by name," the *Luna* Court gave the following example:

> To illustrate, there might be two cases against A for assault to murder on B with a pistol on the same alleged date, and a judgment of conviction or acquittal occur in one case. On the face of the pleadings and judgment a plea of former conviction or acquittal would appear good, and yet A may have tried to kill B on two different occasions on the same day.

*Id.* at 855 (citation omitted). The Court of Criminal Appeals held in *Luna* that, when one cannot determine from the State's pleadings whether the offenses prosecuted are the same, the court must look to the proof offered at trial. *Id.*

■ Here, appellant was charged with and convicted of two violations of Penal Code section 22.04. Under count I, appellant was convicted of violating section 22.04(a) by intentionally or knowingly causing serious bodily injury to a child by shaking or striking him. Under count II, appellant was convicted of violating section 22.04(b) by intentionally or knowingly *by omission* causing serious bodily injury to a child for whom he had a legal duty to act. To prove count I, the State offered evidence that G.V.'s injuries included external bruising around the face, retinal hemorrhaging, damage around the nerve of the left eye, shear injury, and multiple frac-

tured ribs. By contrast, to prove count II, the State offered evidence that appellant, who was G.V.'s father, had prevented Legg from taking G.V. to the hospital when she realized that G.V. needed medical attention. Appellant told Legg that, if they took G.V. to the hospital, the staff would see G.V.'s bruises and call CPS. Legg attempted to call for help, but appellant grabbed her and took her back to the bedroom. Accordingly, the record contains evidence that appellant twice committed injury to a child: first, by shaking G.V. with his hands or striking him with an unknown object, and then, by failing to seek medical treatment for G.V. after he had inflicted those injuries upon him.

■ Thus, appellant was convicted of two separate offenses of injury to a child. *See Vick v. State*, 991 S.W.2d 830, 833 (Tex.Crim.App.1999) (holding that because offenses at issue involved separate acts, it need not be determined whether those offenses would be considered "same" under *Blockburger*[5] test because precondition for employing test—*i.e.* that two offenses involve same conduct—was absent). Because appellant was convicted of two separate offenses, he was subject to a separate penalty for each offense. *See Watson v. State*, 900 S.W.2d 60, 62 (Tex.Crim.App. 1995); *see also Vernon v. State*, 841 S.W.2d 407, 410 (Tex.Crim.App.1992) (holding that those who commit multiple, discrete assaults against same victim are liable for separate prosecutions and punishments for every instance of their criminal conduct). We hold that appellant's right against double jeopardy was not vio-

**5.** *Blockburger v. U.S.*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (holding that successive prosecutions for the same criminal act or transaction under two statutes which require proof of an additional fact does not violate double jeopardy). However, if one offense is always a necessary element of the second offense, the two offenses are the same, and prosecution for both would violate double jeopardy. *Id.; Illinois v. Vitale*, 447 U.S. 410, 419–20, 100 S.Ct. 2260, 2266–67, 65 L.Ed.2d 228 (1980); *Goins v. State*, 841 S.W.2d 527, 529–30 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd).

lated by being convicted on both counts of injury to a child.

We overrule appellant's point of error one.

### Omission of Deadly Weapon Instruction

In point of error two, appellant argues that the trial court erred because it improperly instructed the jury on count I of the indictment. Specifically, appellant argues that "the trial court committed reversible error when it failed to include the statutory definition of deadly weapon in it's [sic] charge to the jury in Count I of the indictment and failed to properly place the burden of proof on the deadly weapon issue upon the State." Appellant further contends that because "the deadly weapon definition was neither plead [sic] in the indictment, nor defined in the court's charge, then any affirmative finding in the judgment ran afoul of the express requirements of TEX.CODE CRIM. PROC. art. 42.12 sec. 3g(a)2 . . . ."

### A. Structural Error

■ Assuming, *arguendo*, that omission of "deadly weapon" was error, it was charge error. *See Hill v. State*, 913 S.W.2d 581, 584–85 (Tex.Crim.App.1996). Appellant argues that "without a proper charge defining 'deadly weapon' and placing the burden of proof on the State requiring the jury to find the use of a deadly weapon beyond a reasonable doubt," he was denied due process of law, which "created a structural error immune from a harmless error analysis." Appellant argues that the charge error committed here is the same type of "structural error" found in *Sullivan v. Louisiana*, in which the trial court gave a definition of "reasonable doubt" that had previously been held unconstitutional. *Sullivan v. Louisiana*, 508 U.S. 275, 281, 113 S.Ct. 2078, 2082–83,

124 L.Ed.2d 182 (1993) (holding that harmless error analysis did not apply when a "beyond a reasonable doubt" instructional error consisted of a misdescription of burden of proof). The jury-instruction error in this case is quite different from the jury-instruction error of the type in *Sullivan*. Here, the court did not submit a constitutionally deficient reasonable-doubt instruction, but, rather, the court omitted the definition of "deadly weapon." *See id.* The omission of the definition did not amount to a denial of the right to a jury verdict of guilt beyond a reasonable doubt without which the criminal trial could not reliably serve its function. *See id.* Accordingly, we decline to find that this is structural error that is not subject to harm analysis.

### B. *Almanza* Analysis

■ Alternatively, appellant claims that the charge was erroneous and constituted egregious harm under *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984). Appellant did not object to the omission of the deadly-weapon definition in the charge.

■ Jury charge errors to which there is no objection are subject to review under the standards established by *Almanza*, 686 S.W.2d at 160. Therefore, error, if any, does not require reversal unless it was so egregious and created such harm that appellant was denied a fair trial. *Id.* at 171. The actual degree of harm must be assayed in light of the entire jury charge; the state of the evidence, including the contested issues and the weight of probative evidence; the argument of counsel; and any other relevant information revealed by the record of the trial as a whole. *Id.* Errors resulting in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a

defense theory. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim.App.1996).

### 1. The Entire Jury Charge

In this case, the application portion of the charge provided, in relevant part, as follows:

> Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about July 29, 2003 in Burleson County, Texas, the defendant, GREGORY LEE VILLANUEVA, did then and there intentionally or knowingly cause serious bodily injury to [G.V.], a child younger than 15 years of age, by shaking the said [G.V.] with his hand or hands, a deadly weapon, or by striking the said [G.V.], with and against an object, a deadly weapon, the exact nature and description of which is unknown to the Grand Jurors, or any combination thereof, you will find the defendant guilty as charged in Count I of the indictment.
>
> If you do not so find, or if you have a reasonable doubt thereof, you will find the defendant not guilty as to Count I of the indictment.

Although the term "deadly weapon" is statutorily defined by Penal Code section 1.07(a)(17),[6] this definition was not included in the jury charge. Nevertheless, the statutory definition is neither complex nor unusual, and the definition is much like the common meaning of the word. *See* TEX. PEN.CODE ANN. § 1.07(a)(17) (Vernon 2005). When the term "deadly weapon" is viewed in the factual context of the charge, the statutory definition is apparent. For instance, the application paragraph states that appellant caused "serious bodily injury to [G.V.], a child younger than 15 years of age, by shaking the said [G.V.] with his hand or hands, a deadly weapon, or by striking the said [G.V.], with and against an object, a deadly weapon...." Therefore, the jury found that appellant caused serious bodily injury to G.V. with his hands or an object, which tracks the statutory definition of "deadly weapon." No harm resulted from the court's failure to include the definition because the facts, as applied to the law in the application paragraph, required the jury to apply the statutory definition. *Cf. Hughes v. State*, 897 S.W.2d 285, 296 (Tex.Crim.App.1994) (holding that because facts, as applied to law in application paragraph, pointed jury to appropriate portion of definitions, no harm resulted from court's failure to limit definitions of culpable mental states to result and circumstances of conduct). Examining the court's charge as a whole, we find that the context in which the term "deadly weapon" was used, and its relation to other words and terms used in the charge, adequately conveyed to the jury the meaning of the term "deadly weapon" under the facts in this case.

### 2. The State of the Evidence

Additionally, the jury heard evidence that, on July 29, 2003, after appellant had been alone with G.V., G.V.'s lips were blue, he was limp, he was making grunting noises, and he had bruises on his inner-right ear and down the left and right side of his face. When G.V. was taken to the Children's Hospital the next day, a medical examination and x-rays revealed that he also had retinal hemorrhaging, damage around the nerve of the left eye, a shear injury, and multiple fractured ribs. G.V.'s shear injury and the stroke that he had suffered had been caused during the previous 24-hour time period. Dr. Rene Jan-

---

**6.** The Texas Penal Code defines a "deadly weapon" as "anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PEN.CODE ANN. § 1.07(a)(17) (Vernon 2005).

kowski, who was an attending physician at the Children's Hospital, testified that G.V.'s retinal hemorrhaging was among the worst that she had ever seen and that the injury was caused by some sort of shaking of G.V. G.V.'s shear injury was associated with very rapid acceleration— deceleration injury, *i.e.* instead of G.V.'s just being shaken forward and back, G.V. was banged against something that stopped the movement acutely. Because there was no massive skull fracture or external bruising on the back of G.V.'s head, Dr. Jankowski concluded that G.V.'s injury had been caused by "[b]anging the head against a couch cushion, against a mattress pillow, against a pillow or something like that."[7] Dr. Kerr's assessment was that G.V.'s injuries were caused by shaken-baby syndrome, and his opinion was that the baby had been injured when appellant was alone in the bedroom with G.V., which was when Legg had heard the bed shaking and squeaking loudly. Because the evidence was sufficient to establish that appellant used his hands or an object to cause serious bodily injury to G.V., the trial court's failure to include the statutory definition did not result in egregious harm. *See Olveda v. State*, 650 S.W.2d 408, 409 (Tex.Crim.App.1983) (holding that omission of statutory definition of "in the course of committing theft" from charge not reversible error); *White v. State*, 844 S.W.2d 929, 933 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd) (holding that defendant was not egregiously harmed by omission of statutory definition of term "knowledge" from charge because of strength of State's evidence and because argument properly presented issue of defendant's knowledge to jury).

### 3. The Arguments of Counsel

Additionally, both parties' closing arguments were consistent with the proposition that the State had to prove that appellant caused serious bodily injury to G.V. by shaking him with his hands or by striking him with an object, in order to obtain a valid conviction. Appellant's attorney argued in part:

> The State has the burden to prove beyond a reasonable doubt that [appellant] committed this act. And, ladies and gentlemen, it is offensive. What happened to this baby is absolutely terrible. Nobody is denying that. Nobody is here trying to say, well, maybe the baby was sick or maybe it was something else. The evidence supports that this baby was shaken and killed. There is no doubt. But the evidence does not support that [appellant] is the person who did that.

The prosecutor's closing argument included the following:

> This defendant is guilty of injury to a child by shaking this child with his hands, slamming this child, a combination of that however he exactly did it, he caused those injuries to this child with his hands, these two deadly weapons that he used on this child. And then he failed, knowing that, to take that child for medical treatment. He's guilty beyond a reasonable doubt, in both counts of the indictment.

### 4. Appellant's Arguments

Appellant contends that the omission of the definition of "deadly weapon" caused him egregious harm because (1) the jury was not guided by the rule of law; (2) the State was relieved of its burden of proof;

7. The doctors later obtained evidence that G.V. had been abused and beaten more than one time. A healing bruise was found on the back of G.V.'s head, but that bruise was not the cause of the shear injury that had been inflicted in the 24 hours prior to June 29, 2003.

and (3) the language of the application paragraph in conjunction with the omission of the definition implicitly commented on the weight of the evidence.

### a. Rule of Law

■ Appellant contends that the omission of a definition of "deadly weapon" in the charge "deprived [him] of a valuable right to have the jury guided by the rule of law."

Given the application paragraph and evidence presented, even without the definition of "deadly weapon," a reasonable juror could have concluded that appellant had used either his hands or an object to cause serious bodily injury to G.V., which, under section 1.07(17), made appellant's "hands" or the "object" a deadly weapon. *See* Tex. Pen.Code Ann. § 1.07(a)(17). Further, appellant has not shown that the elements were in question, that the jury was confused about the definitions, or that he would have benefitted from the definitions. *See Mosley v. State,* 686 S.W.2d 180, 182 (Tex.Crim.App.1985) (finding that jury was not misled by omission of definition of "bodily injury" because no issue was presented by evidence or arguments to suggest either that bodily injury was in dispute or that there was confusion about what was meant by term). Having reviewed the omitted statutory definition in light of the entire charge and the evidence presented at trial, it is hard to imagine how the definition's inclusion would have changed the verdict. That omission has no relation to the fact that the jury did not believe appellant's theory of the case.

### b. Burden of Proof

■ Appellant argues that "without a statutory definition included in the charge, the burden of proof on the deadly weapon issue was not placed squarely upon the State." Appellant specifically contends that because the statutory definition was omitted, "the jury had no way of knowing whether the State was alleging a subsection (A) deadly weapon or a subsection (B) deadly weapon.... [I]f a subsection (A) deadly weapon was alleged the State would be required to prove as such. Similarly, a subsection (B) allegation would require the State to prove it."

■ To obtain an affirmative deadly weapon finding, the State must prove beyond a reasonable doubt that the defendant used or exhibited a deadly weapon during the offense. *Hill,* 913 S.W.2d at 583. The Texas Court of Criminal Appeals has recognized that a hand may be a deadly weapon within the meaning of section 1.07(a)(17), "depending upon the evidence shown." *Turner v. State,* 664 S.W.2d 86, 90 (Tex.Crim.App.1983). The State needed to prove only that appellant's hands were capable of causing serious bodily injury in the way that they were used or intended to be used. *See Hill,* 913 S.W.2d at 584.

As described above, the evidence presented at trial was sufficient to establish that appellant used his hands or an object to cause serious bodily injury to G.V. Because the indictment and charge here stated that appellant caused serious bodily injury to G.V. with his hands or an object, the State obviously relied on subsection (B) of section 1.07(a)(17), rather than subsection (A). In arguing that the burden of proof was not placed upon the State, appellant disregards the language in the charge that stated, "[I]f you find from the evidence beyond a reasonable doubt...." When read in context and in conjunction with the abstract portion, the charge clearly instructed the jury to convict only if the jurors found *beyond a reasonable doubt* from the evidence that appellant had caused serious bodily injury to G.V. by shaking G.V. with his hands or by striking G.V. against an object.

It is clear from a review of the record as a whole that the jury was made aware that the State had to prove, in order to obtain a valid conviction, that appellant caused serious bodily injury to G.V. with his hands or an object.

Accordingly, appellant has not demonstrated that the State's burden of proof on the affirmative finding as to a deadly weapon was affected by the omission of the definition of deadly weapon.

### c. Improper Comment on Weight of Evidence

■ Appellant argues that the language in the application paragraph of count I, in conjunction with the omission of the definition, implicitly commented on the weight of the evidence because it presumed that appellant used or exhibited a deadly weapon. In support of his argument, appellant contends that "the deadly weapon instruction submitted in the application paragraph was not neutral. As presented, it appeared almost as a statement of fact rather than an allegation to be proved."

■ A trial court, in preparing and submitting a jury charge, is prohibited from expressing any opinion as to the weight of the evidence, from summing up the testimony, from discussing the facts, or from using any argument in the charge calculated to arouse the sympathy or to excite the passions of the jury. TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2005). A charge that constitutes a comment by the court on the elements of the offense charged or assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous. *Whaley v. State*, 717 S.W.2d 26, 32 (Tex.Crim.App. 1986); *Grady v. State*, 634 S.W.2d 316, 317 (Tex.Crim.App.1982).

Although appellant does not cite to *Andrews v. State*, his contention that, by placing "a deadly weapon" in apposition to "hands" and "object," the jury was relieved from having to find that hands or object was a deadly weapon appears, at first blush, to find some support in that case. *See id,* 652 S.W.2d 370, 373–74 (Tex. Crim.App.1983). In *Andrews*, the Court of Criminal Appeals held that the application paragraph of that charge was erroneous because the application paragraph of the charge eliminated from the State's burden a key element of the offense. *Id.* In *Andrews*, however, the defendant timely and properly objected to the application portion of the charge.[8] In the instant case, no objection was made at trial. *Id.* at 373.

In *Andrews*, the Court of Criminal Appeals held that the application paragraph of the charge eliminated from the State's burden a key element of the offense that it had to prove before a valid conviction could occur, that is, whether the magazine depicted and described patently offensive representations of actual or simulated sexual intercourse, anal intercourse, and oral sodomy. *Id.* at 374. The court further held that the application paragraph was

---

8. The application paragraph in *Andrews* read as follows:

Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, William Andrews, in Harris County, Texas, on or about the 7th day of August, 1980, did, knowing the content and character of the material, intentionally sell to O.W. Farrell obscene material, namely one magazine entitled "Swedish Erotica No. 25"

**which depicts and describes patently offensive representations of actual or simulated sexual intercourse, and oral sodomy, then you will find the defendant guilty of the alleged offense.** If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty. (Emphasis added.)

*Andrews v. State,* 652 S.W.2d 370, 373 (Tex. Crim.App.1983).

subject to the defendant's objections and the trial court erred in overruling these objection. *Id.*

The charge in this case does not suffer from the same infirmity as the charge in *Andrews.* Appellant did not object at trial to the application paragraph. Although the application paragraph here listed alternative weapons, the issue did not inform the jury that any weapon, deadly or otherwise, had in fact been used by appellant. The application paragraph applied the statutory definition of deadly weapon to the facts in the case. By contrast, in *Andrews,* the charge described the magazine as "patently offensive," rather than allowing the jury to determine whether or not the material was obscene.

By finding appellant guilty, the jury necessarily believed beyond a reasonable doubt that appellant caused serious bodily injury to G.V. with his hand or an object. In the first sentence of the application paragraph, the jury was instructed, "[I]f you find from the evidence beyond a reasonable doubt." That phrase modifies every subsequent phrase in the application paragraph. Reading the application paragraph as a whole, each separate portion, including the complained-of phrase, incorporates the opening phrase. Thus, the charge, reasonably construed, required the jury to find, beyond a reasonable doubt, that appellant caused serious bodily injury to G.V. with his hand or an object. *See McElroy v. State,* 528 S.W.2d 831, 834 (Tex.Crim.App.1975). Consequently, the court's use of the words "a deadly weapon," unaccompanied by a definition of that term, was not an assumption, nor was it a comment on an element of the offense in the charge. *See Collins v. State,* 800 S.W.2d 267, 270 (Tex.App.-Houston [14th Dist.] 1990, no pet.).

### 5. Resolution

Considering the charge as a whole, the state of the evidence, and the arguments of counsel, we hold that appellant did not show that he suffered egregious harm. *See Almanza,* 686 S.W.2d at 160.

We overrule appellant's point of error two.

### Legal Sufficiency

In points of error three and five, appellant argues that the evidence is legally insufficient to support an affirmative finding that a deadly weapon was used in the commission of the offense charged in count I and to show that appellant had a duty to act in the offense charged in count II.

In determining the legal sufficiency of the evidence, we review the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Escamilla v. State,* 143 S.W.3d 814, 817 (Tex.Crim.App.2004). We may not re-weigh the evidence or substitute our judgment for that of the fact finder. *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim. App.2000). This standard of review is the same for both direct-and circumstantial-evidence cases. *Fitts v. State,* 982 S.W.2d 175, 185 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd). If there is evidence that establishes guilt beyond a reasonable doubt and the jury believes that evidence, the judgment must be affirmed. *Id.*

### A. Count One

In point of error three, appellant argues that "no rational trier of fact could have found he used or exhibited a deadly weapon during the commission of the alleged offense of Count I of the indictment." Appellant seeks reformation of the judgment

to eliminate the affirmative finding of a deadly weapon.

■ When the State alleges the use of a deadly weapon that is not deadly per se, like the ones here, the State must prove beyond a reasonable doubt that the weapon was used in a manner capable of causing death or serious bodily injury. *Hill,* 913 S.W.2d at 584. Texas Penal Code Section 1.07(a)(17)(B) provides, in relevant part, that a "deadly weapon" is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B) (Vernon 2005). Texas Penal Code Section 1.07(a)(46) provides that " 'serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Pen.Code Ann. § 1.07(a)(46) (Vernon 2005).

■ The Texas Court of Criminal Appeals has recognized that a hand may be a deadly weapon within the meaning of section 1.07(a)(17), "depending upon the evidence shown." *Turner,* 664 S.W.2d at 90. To determine whether something is a deadly weapon, the jury may consider all the surrounding facts, including the defendant's words. *Blain v. State,* 647 S.W.2d 293, 294 (Tex.Crim.App.1983). The State needed to prove only that appellant's hands were capable of causing serious bodily injury in the way that they were used or intended to be used. *See Hill,* 913 S.W.2d at 584.

■ Viewed in the light most favorable to the verdict, the evidence presented at trial established that G.V.'s injuries were caused by violent shaking or very high-impact force. In this case, G.V. suffered external bruising around his face, severe retinal hemorrhaging, damage around the nerve of his left eye, a brain hemorrhage, and multiple broken ribs. Dr. Kerr's assessment was that G.V.'s injuries were caused by shaken-baby syndrome. Because there was no massive skull fracture or external bruising on the back of G.V.'s head, Dr. Jankowski concluded that G.V.'s injuries had been caused by "[b]anging the head against a couch cushion, against a mattress pillow, against a pillow or something like that." In addition, the jury saw photographs of the victim taken shortly after the incident, which showed bruising on G.V.'s cheek, chin, right ear, and arms. As a result of the injuries inflicted by appellant, G.V. had no brain activity and was intubated because he could not breathe on his own; G.V. ultimately died as a result of his injuries.

From this evidence, the jury could have rationally concluded that appellant's hands, in the manner used, were capable of inflicting serious bodily injury to G.V. *See Morales v. State,* 792 S.W.2d 789, 790–91 (Tex. App.-Houston [1st Dist.] 1990, no pet.) (holding evidence sufficient to support deadly-weapon finding when evidence showed that defendant used his hands to suffocate victim). We hold that the evidence was legally sufficient to show that appellant used a deadly weapon during the commission of the offense alleged under count I of the indictment.

We overrule appellant's point of error three.

## B. Count Two

In point of error five, appellant argues that "the evidence did not show the Appellant had a duty to act in light of the facts known to him at the time on the omission."

Section 22.04(a) of the Penal Code provides, in relevant part, that a person commits an offense if he intentionally or knowingly, by act or omission, causes bodily injury to a child. Tex. Pen.Code Ann.

§ 22.04(a). An omission that causes serious bodily injury is conduct constituting an offense if the actor has a legal or statutory duty to act. *Id.* § 22.04(b). The Family Code provides that a parent has a duty to care for, to control, to protect, and to provide medical care to a child. Tex. Fam. Code Ann. § 151.001(a)(2), (3).

Viewed in the light most favorable to the verdict, the evidence presented at trial established that appellant discussed G.V.'s deteriorating medical condition with Legg and decided not to take G.V. himself or to let her take G.V. to the hospital, for fear that CPS would be called. Legg told appellant that she wanted to take G.V. to the hospital because his lips were blue, he had bruises on his face, he was grunting, and his body was limp. The testimony indicated that the child was in obvious, severe distress from having suffered injuries; he was not acting normally. Legg attempted to call for help, but appellant grabbed her by her arm, took her back to the bedroom, and would not let her take G.V. to the hospital, but refused to act or to allow another to act. This evidence shows that appellant was aware of G.V.'s dire medical condition and the need to take him to the hospital. G.V.'s sickly appearance, limp body, and grunting all provided ample evidence to support a guilty verdict on count II. Further, Dr. Draehn stated that a layperson who was not a physician should have been "really concerned and have great trepidation about [G.V.'s] health." The evidence was sufficient for a rational jury to find beyond a reasonable doubt that appellant intentionally or knowingly caused serious bodily injury to G.V. through his failure to provide medical care when he had a duty to provide that care.

We overrule appellant's point of error five.

## Fatal Variance

In point of error four, appellant complains that "there was a fatal variance between the indictment and proof since the state failed to prove the grand jury used due diligence in attempting to ascertain the exact manner and means with [by] which appellant caused serious bodily injury to the victim."

Appellant contends that "[t]he medical testimony at trial showed the exact manner and means which caused the victim's head trauma. Specifically, the evidence showed the victim was injured by having been 'shaken' and having been 'struck' with or against some object." If the nature of the object can be arrived at only by circumstantial evidence, then an "unknown object" averment may be employed. *See Simon v. State,* 488 S.W.2d 439, 444 (Tex.Crim.App.1972). If the evidence at trial fails conclusively to show the object used to commit the alleged offense, there is a prima facie showing that the object was unknown to the grand jury. *Matson v. State,* 819 S.W.2d 839, 847 (Tex. Crim.App.1991). In such an instance, it is not necessary to prove whether the grand jury used reasonable diligence to discover the identity of the object. *Matson,* 819 S.W.2d at 847. A variance occurs if a discrepancy exists between the allegation in the indictment and the proof presented at trial. *Gollihar v. State,* 46 S.W.3d 243, 246 (Tex.Crim.App.2001). In such cases, if the State has proven the defendant guilty of a crime, but has proven the commission of the crime in a manner that varies from the manner alleged in the indictment, a variance exists that may render the evidence insufficient to sustain the conviction. *Id.* at 247.

The indictment in count I provided:

The Grand Jurors ... present in and to said Court, that GREGORY LEE VILLANUEVA, on or about the 29th day of July, A.D.2003, and before the presentment of this indictment in said County and State, did then and there intentionally or knowingly cause serious bodily injury to [G.V.], a child younger than 15 years of age, by shaking the said [G.V.] with his hand or hands, a deadly weapon, and by striking the said [G.V.] with and against an object, a deadly weapon, the exact nature and description of which is unknown to the Grand Jurors, and any combination thereof. ...

In this case, G.V.'s retinal and brain hemorrhaging were evidence of shaken-baby syndrome, specifically, his injuries had been caused by some type of impact force. The only evidence of the possible type of object used was Dr. Jankowski's testimony that G.V.'s brain injury could have been caused by "[b]anging the head against a couch cushion, against a mattress pillow, against a pillow or something like that." Legg and Dr. Kerr also testified that they believed that G.V. had been injured when Legg heard squeaking coming from the bedroom, where appellant was alone with G.V. From this evidence, we are unable to conclude that the evidence at trial conclusively showed the identity of the object against which G.V. was struck. At most, it showed that the object *could* have been a soft surface, such as a cushion or a mattress.

Further, Dr. Elizabeth Peacock, deputy medical examiner for Travis County, stated that there was no way to tell if G.V.'s impact injury had been caused by a soft surface, as opposed to a hard surface. She also stated that G.V.'s death could have been caused by either the impact injury or by the shaking injury. This evidence defeats appellant's argument that the proof conclusively showed how G.V. was injured.

*See McFarland v. State,* 845 S.W.2d 824, 830–31 (Tex.Crim.App.1992), *overruled on other grounds, Bingham v. State,* 915 S.W.2d 9 (Tex.Crim.App.1994) (finding that evidence referring to possible characteristics as being "knifelike" in nature was insufficient to prove that weapon was knife). Nothing is developed at trial to suggest that, through investigation, the grand jury could have ascertained the identity of the object alleged to be unknown; there was, therefore, a prima facie showing that the object's identity was unknown to the grand jury, thereby supporting the allegation in the indictment. *See Matson,* 819 S.W.2d at 847. Accordingly, we hold that, because the evidence was inconclusive as to the instrumentality that appellant used to strike G.V., which comports with the allegation in the indictment, the claim of a fatal variance between the indictment and the proof fails. *See Boyd v. State,* 811 S.W.2d 105, 122–23 (Tex. Crim.App.1991); *McNiel v. State,* 757 S.W.2d 129, 132 (Tex.App.-Houston [1st Dist.] 1988, no pet.).

We overrule appellant's point of error four.

### Conclusion

We affirm the judgment of the trial court.