Opinion issued December 11, 2008 
 





    







In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-07-00301-CR
____________

ELDEN LEE CARTER, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from 23rd District Court
Brazoria County, Texas
Trial Court Cause No. 51803



 
MEMORANDUM OPINION

          A jury found appellant, Elden Lee Carter, guilty of felony murder.


 Having
found true the enhancement allegation of a prior conviction for burglary of a building,
the jury assessed punishment at life in prison. We determine whether the trial court
erred (1) in admitting hospital blood alcohol test results that appellant contends were
inadmissible under Texas Code of Criminal Procedure article 38.35(d)(1)


 and (2) in
making an improper comment in the jury charge on the weight of the evidence. We
affirm.Facts
          Appellant’s truck veered into oncoming traffic at around 6:00 p.m. on May 13,
2006, colliding with a minivan driven by Jessica Engelbrecht, who died of multiple
blunt force injuries consistent with a motor vehicle accident. Prior to the accident,
appellant consumed alcoholic beverages at nearby Surfside beach at about 4:00 p.m. 
Appellant and a friend left the beach and went to the Nite Mares bar around 5:00 or
5:30 p.m. After a short stay, appellant returned to his vehicle and began driving back
to the beach. Appellant was driving on an overpass when he steered his vehicle
toward a guard rail and then swerved into oncoming traffic, striking Jessica’s vehicle
while traveling between 54–57 miles-per-hour in a 45 mile-per-hour zone. Jessica
was traveling only 40 miles per hour at the time of the collision. 
          At the scene of the accident, witnesses observed appellant’s behavior as
belligerent and disoriented and noticed his slurred speech, his bloodshot eyes and the
smell of alcohol emanating from his person. The accident scene was strewn with
wreckage and a large number of beer cans, some of which were empty, which had
apparently been thrown into the back of appellant’s truck by companions at the beach,
while the contents of other cans were spilling onto the pavement. Witnesses observed
appellant rolling around in oil at the scene. While receiving treatment for his injuries,
appellant stated to an emergency medical technician, “I’m going to be going to jail
for this one.”
          Dr. Pin Lam, appellant’s treating emergency room doctor at Brazosport
Methodist Hospital, requested a blood alcohol test as part of his judgment and
practice in evaluating trauma patients, because alcohol could affect certain
medications. Joann Smith, appellant’s treating nurse, drew blood from appellant for
the ordered blood alcohol test. A law enforcement officer asked Nurse Smith to draw
blood for alcohol testing; however, the officer had not brought the necessary tubes
to take a sample and so told Smith that he would instead subpeona the hospital’s
records. Nurse Smith, being unable to verify that the emergency medical technicians
had drawn appellant’s blood properly, or even that the sample previously drawn was
actually appellant’s blood, drew a sample of appellant’s blood in order to make sure
that it had been done correctly and forwarded it to the laboratory. She then contacted
the laboratory and told the technician to run the blood alcohol test on the sample that
she had sent, rather than the one that the laboratory had received previously. 
Admissibility of Evidence
          In his first point of error, appellant contends that the trial court erred in not
excluding the results of the blood alcohol tests because Brazosport Memorial
Hospital’s medical laboratory was not accredited by the public safety director of the
Texas Department of Public Safety and, therefore, the blood test results were
inadmissible pursuant to article 38.35 of the Texas Code of Criminal Procedure. The
State responds that the blood tests were conducted principally for medical purposes 
and so article 38.35 is inapplicable.
          Article 38.35 provides, in relevant part: 
          (a) In this article:
 
(1) “Crime laboratory” includes a public or private laboratory or
other entity that conducts a forensic analysis subject to this
article.
 
(2) “Criminal action” includes an investigation, complaint, arrest,
bail, bond, trial, appeal, punishment, or other matter related to
conduct proscribed by a criminal offense.
 
(3) “Director” means the public safety director of the Department
of Public Safety.
 
(4) “Forensic analysis” means a medical, chemical, toxicologic,
ballistic, or other expert examination or test performed on
physical evidence, including DNA evidence, for the purpose of
determining the connection of the evidence to a criminal action. 
The term includes an examination or test requested by a law
enforcement agency, prosecutor, criminal suspect or defendant,
or court. The term does not include:
                    . . . 
 
(F) an expert examination or test conducted principally
for the purpose of scientific research, medical practice,
civil or administrative litigation, or other purpose
unrelated to determining the connection of physical
evidence to a criminal action.
                     . . .
 
(d)(1) . . . [A] forensic analysis of physical evidence under this
article and expert testimony relating to the evidence are not
admissible in a criminal action if, at the time of the analysis, the
crime laboratory conducting the analysis was not accredited by
the director . . . .
Tex. Code Crim. Proc. Ann. art 38.35(a)(1), (2), (3), (4)(F), (d)(1) (Vernon Supp.
2008). 
          After the jury was selected, but before trial began, appellant raised an objection
to the admission of any blood or blood testing, citing article 38.35. The trial court
asked when the evidence might be offered, requested the parties to provide case law,
and stated that “we’ll look at that.” A recess was later taken at trial and a hearing
conducted outside of the presence of the jury regarding the admissibility of the
evidence. At the hearing, the trial court heard undisputed evidence that the medical
laboratory at Brazosport Methodist Hospital was not certified by the Texas
Department of Public Safety. The court also heard from Dr. Lam, the attending
emergency room doctor, who testified to ordering a test of appellant’s blood alcohol
level. Dr. Lam testified that he ordered the test because alcohol level is part of the
practice in the evaluation of major traumas and it was important for purposes of
ordering medications. Dr. Lam stated that no one from law enforcement had told him
to take the test and that it was done as part of his evaluation on that type of patient. 
Dr. Lam also testified that he reduced appellant’s level of medication based on
appellant’s intoxication. Also testifying was Nurse Smith, who had drawn appellant’s
blood. She stated that an officer had asked her to collect a sample of appellant’s
blood for the officer to send to “his” lab, but brought a urine container, rather than a
blood container, and so told her that he would subpoena the hospital’s records. Nurse
Smith testified that she had not drawn the blood for an officer, but for the hospital,
though she admitted that she would have given the officer a sample if he had brought
the proper tube. There had been a doctor’s order for a blood sample to be taken. A
sample had previously been taken by the paramedics, but she redrew the blood
because she wanted an accurate sample. Nurse Smith was concerned that the
paramedics’ sample had not been collected properly—possibly collected with alcohol
rather than Betadine––and so might lead to inaccurate blood alcohol results. After
hearing all of the evidence,


 the trial court determined that the sample was ordered
primarily for medical purposes and ruled that it would admit the evidence. 
          On appeal, appellant acknowledges that a test conducted primarily for the
purpose of medical practice, or other purpose unrelated to determining the connection
of physical evidence to a criminal action, is excluded from the provisions of article
38.35, but he argues that the blood in this case was drawn in order to determine the
connection of physical evidence to a criminal action, citing to Nurse Smith’s
testimony that an officer had asked her to draw blood. 
          We review a trial court’s ruling on a motion to suppress


 under an abuse-of-
discretion standard, giving almost total deference to a trial court’s determination of
historical facts that are supported by the record, especially those that are based on an
evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997). We review de novo the trial court’s application of the law to the 
facts. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We view
the evidence in the light most favorable to the trial court’s ruling, State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999), keeping in mind that the trial court is
the sole trier of fact and judge of the credibility of the witnesses and the weight to be
given their testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). 
We must uphold the trial court’s ruling if it is reasonably supported by the record and
is correct under any theory of law applicable to the case. Id. at 856.
          The trial court determined that the blood alcohol test was ordered primarily for
medical purposes. Because this determination turned on the trial court’s evaluation
of the credibility of Dr. Lam and Nurse Smith, and is supported by the record, we are
required to grant almost total deference to this finding. See Guzman, 955 S.W.2d at
89. Viewing the evidence in the light most favorable to the trial court’s ruling, the
trial court’s determination that appellant’s blood was principally drawn for medical
purposes was well within the proper exercise of its discretion. Accordingly, the
exception of article 38.35(a)(4)(F) applied, and hospital laboratory’s lack of
accreditation by the Texas Department of Public Safety did not render the blood test
results inadmissible. See Tex. Code Crim. Proc. Ann. art 38.35(a)(4)(F). The trial
court therefore properly did not exclude the blood test results under article 38.35. We
overrule appellant’s first point of error.
Jury Charge
          In his second point of error, appellant asserts that the trial court denied his due
process rights by eliminating the State’s burden of proof by inappropriately
commenting on the weight of the evidence pursuant to the jury charge at guilt-innocence. 
          The portion of the charge complained of in the application paragraph of the
charge on felony murder is as follows:
Now bearing in mind the foregoing instructions, if you believe from the
evidence beyond a reasonable doubt, that the defendant, ELDEN LEE
CARTER, on or about the 13th day of May, 2006, in the County of
Brazoria, State of Texas, as alleged in the indictment, did then and there
unlawfully commit the offense of felony driving while intoxicated by
operating a motor vehicle in a public place while the defendant was
intoxicated by not having the normal use of mental or physical faculties
by reason of the introduction of alcohol into the Defendant’s body, or by
having an alcohol concentration of at least .08, after having been at least
twice before convicted of driving while intoxicated, namely the
defendant was convicted of driving while intoxicated on or about the
16th day of March, 2005, in cause number 46,568 in the District Court
of Brazoria County, Texas, and the defendant was previously convicted
of driving while intoxicated on or about the 14th day of January 2000,
in cause number 102087M, in County Court at Law Number One of
Brazoria County, Texas, and the defendant was previously convicted of
driving while intoxicated on or about the 6th day of December, 1996, in
cause number 90523M, in County Court at law Number One of Brazoria
County, Texas and while in the course of and in furtherance of the
commission of the offense of felony driving while intoxicated the
defendant did commit an act or acts clearly dangerous to human life, to
wit: failing to maintain a single lane of traffic, failing to take proper
evasive action, failing to control his speed, failing to properly use the
safety appliances in the motor vehicle operated by the defendant in a
timely manner, or failing to maintain a proper lookout thereby striking
a vehicle occupied by Jessica Engelbrecht and did thereby cause the
death of Jessica Engelbrecht; then you will find the defendant guilty of
the offense of MURDER as alleged in the indictment.
          Unless you do so believe from the evidence beyond a reasonable
doubt, or if you have a reasonable doubt thereof, you will acquit the
defendant of MURDER, as alleged in the indictment and say by your
verdict not guilty.
 
(Emphasis added). Appellant did not object to this language in the charge at trial. 
          All jury-charge error must be considered, whether or not an objection to the
charge was made. See Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App.
2003). In analyzing a jury-charge issue, our first duty is to decide if error exists. Id.
Only if we find error, do we then consider whether an objection to the charge was
made and analyze for harm. Id.; see also Warner v. State, 245 S.W.3d 458, 461 (Tex.
Crim. App. 2008) (“The failure to preserve jury-charge error is not a bar to appellate
review, but rather it establishes the degree of harm necessary for reversal.”). 
          The challenged language that appellant contends violated his due process rights
consists of “was convicted,” and “was previously convicted,” and he points to the
lack of qualifying language such as “if he was,” which he asserts would have alerted
the jurors to the fact that it was the jury’s task to determine whether he was, in fact,
previously convicted in those specific offenses. Appellant argues that the charge was
a comment on the weight of the evidence because it assumed the truth of a
controverted issue. 
          Appellant acknowledges this Court’s previous holding in Villanueva v. State,
regarding the phrase “[i]f you find from the evidence beyond a reasonable doubt.”
194 S.W.3d 146, 158 (Tex. App.—Houston [1st Dist.] 2006) (holding that inclusion
of this phrase modifies every subsequent phrase in application paragraph and that
each separate portion incorporates opening phrase), aff’d in part & rev’d in part on
other grounds, 227 S.W.3d 744 (Tex. Crim. App. 2007). Appellant contends that a
fair reading of the application paragraph shows that this legal inference would not
have been clear at all to the jury. We hold that Villanueva controls. 
          The application paragraph begins with the phrase, “Now bearing in mind the
forgoing instructions, if you believe from the evidence beyond a reasonable doubt ....” 
The paragraph concludes with the phrase, “Unless you do so believe from the
evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof . . . .”
Both the opening and closing language are to be applied to the entirety of the charge.
Id. As we held in Villanueva, this language sufficiently instructs the jury that it must
find each element beyond a reasonable doubt rather than assuming the existence of
any. Id. at 156–58. In Villanueva, we rejected the contention that conditional
language such as “if any” was necessary. Id. Therefore, there was no error in the
exclusion of subsequent qualifying language for each portion of the charge.
          We overrule appellant’s second point of error.
Conclusion
          We affirm the judgment of the trial court. 
 
Tim Taft
Justice
 
Panel consists of Justices Taft, Keyes, and Alcala.

Do not publish. Tex. R. App. P. 47.2(b).