

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00442-CR

Gilberto Ozuna **MORENO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR11608
Honorable Frank J. Castro, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
    Karen Angelini, Justice
    Irene Rios, Justice

Delivered and Filed:  June 27, 2018

AFFIRMED

Gilberto Moreno appeals his conviction for continuous family violence. In a single issue on appeal, Moreno contends the trial court erred by not including the definition of "dating relationship" in the jury charge and that he was egregiously harmed by the error. We affirm the judgment of the trial court.

## BACKGROUND

On February 20, 2016, the San Antonio Police Department ("SAPD") dispatched an officer to respond to an assault in progress. Upon arrival police found Laura Rodriguez, Moreno's

girlfriend, with several injuries. Officers arrested Moreno for the assault. On May 4, 2016, SAPD responded to another domestic disturbance call. The disturbance occurred at the house where Moreno was temporarily living with his estranged wife Dora Almendarez and his daughter, Julissa Moreno. Moreno fled the house following the incident. Officers later found and arrested Moreno for assaulting Almendarez and Julissa.

In a two-count indictment, the State charged Moreno with two counts of continuous family violence. Count I alleged Moreno assaulted Almendarez and Rodriguez within a twelve-month period, and Count II alleged Moreno assaulted Julissa and Rodriguez within a twelve-month period. The jury found Moreno guilty for both counts of continuous family violence, but the State moved to vacate the second count for double jeopardy reasons, and the motion was granted by the trial court. The trial court assessed punishment at five years' imprisonment; suspended in favor of five years' community supervision, and a $1,500 fine. Moreno appealed.

### CHARGE ERROR

Moreno contends the trial court erroneously omitted the definition of "dating relationship" from the jury charge. Acknowledging he did not object to the error at trial, Moreno argues the lack of the definition of "dating relationship" in the jury charge caused him to suffer egregious harm. The State concedes the trial court erred by not including the definition in the jury charge, but argues Moreno was not egregiously harmed by the error.

When a defendant fails to object to the jury charge at trial, we will affirm the trial court's judgment unless we determine the charge error caused the appellant to suffer harm so egregious that the appellant has not had a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Egregious harm is a high and difficult standard to meet. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). It "affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *State v. Ambrose*, 457 S.W.3d

154, 160 (Tex. App.—San Antonio 2015), *aff'd*, 487 S.W.3d 587 (Tex. Crim. App. 2016). In assessing the harm caused by failing to properly instruct the jury, we consider the "entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171.

### *The Entire Jury Charge*

The jury charge in this case began by explaining Moreno was charged by indictment "with the offense of Continuous Violence Against the Family, alleged to have been committed on or about the 4th day of May, 2016, and on the 20th day of February, 2016 in Bexar County, Texas," to which Moreno pleaded not guilty. In the abstract portion, the charge generally explained a person "commits the offense of Continuous Violence Against the Family if during a period that is 12 months or less in duration, the person two or more times engages in conduct that constitutes an assault against another person or persons who is a member of the defendant's family." The abstract portion also explained a person commits the offense of assault if the person intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. The charge defined "bodily injury", "spouse", "family", and provided the definitions of "intentionally", "knowingly" and "recklessly." However, the charge did not provide the definition of "dating relationship."

The charge also included the following application paragraph:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 4th day of May, 2016, in Bexar County, Texas, the defendant, Gilberto Moreno, did intentionally, knowingly, or recklessly cause bodily injury to Dora Almendarez, a member of Gilberto Moreno's family, by pushing Dora Almendarez with the hand of Gilberto Moreno or by striking Dora Almendarez with the hand of Gilberto Moreno; and on or about the 20th day of February, 2016 Gilberto Moreno did intentionally, knowingly, or recklessly cause bodily injury to Laura Rodriguez, a person with whom Gilberto Moreno has or had a Dating relationship with, by striking Laura Rodriguez with the hand of Gilberto Moreno or by kicking Laura

Rodriguez with the foot of Gilberto Moreno, and said conduct by Gilberto Moreno occurred during a period that was 12 months or less in duration, then you will find the defendant guilty of Continuous Violence Against the Family as charged in Count I of the indictment.

The application paragraph also instructed the jury to acquit Moreno if it had "reasonable doubt thereof." The jury was further instructed on the presumption of innocence, Moreno's right not to testify, the State's burden of proof, the jury's role as factfinder.

### State of the Evidence

Six witnesses testified for the state. Regarding the first incident, SAPD Officer Melissa Gallardo testified she was the first to respond to the scene. She stated that upon arriving on the scene, she spoke with Rodriguez, who reported she had been assaulted by her boyfriend Moreno. Officer Gallardo testified Rodriguez stated she and Moreno were arguing and he began punching Rodriguez in the head. Detective Jimmy Hall photographed Rodriguez's injuries, which included a busted lip and bruised arm. It appeared Rodriguez's earring had been ripped out. Detective Hall testified some of Rodriguez's injuries appeared fresh and others appeared older.

At trial, Rodriguez testified both she and Moreno were intoxicated at the time of the incident. According to Rodriguez, the couple had been dating since 2012, and they were homeless at the time of the incident. She further testified that she and Moreno have three children together. Rodriguez testified she told officers at the scene that Moreno did not assault her and the injuries observed by the officers occurred after she was hit by a car. Rodriguez admitted Moreno pushed her. She also testified regarding a letter she wrote to Moreno's defense counsel, in which she stated she was intoxicated at the time of the incident and that Moreno did not have anything to do with the injuries she had.

SAPD Officer James Tullis was the first officer to respond to the second incident. At trial, he testified he spoke with Almendarez first upon arriving at the scene. Officer Tullis noticed a

mark on Almendarez's chest and signs of redness; he also noticed redness on Julissa. A detective photographed the injuries on both Almendarez and Julissa.

Julissa testified that at the time of the incident, Moreno was staying in the house. Julissa testified she left a 12-pack of beer in the refrigerator, which Moreno drank to the point of intoxication. Julissa further testified Moreno began to make unwanted sexual advances on Almendarez, which were rejected. Julissa testified she removed Moreno from her mother's bedroom and locked the door at Almendarez's request. Moreno later returned and gained access to the bedroom by unscrewing the doorknob, at which time Moreno and Almendarez began to argue. Moreno struck Julissa when she mentioned calling the police. Julissa testified Almendarez and Moreno struggled for the phone and that Moreno punched and pushed Almendarez multiple times before he fled the house. Almendarez testified similarly to Julissa, but further testified she was aware Moreno and Rodriguez were dating.

### Argument of Counsel & Other Relevant Information

During its opening statement, the State explained to the jury that it would hear testimony regarding two separate assaults by Moreno. Regarding the first assault, the State explained police found Moreno's girlfriend Rodriguez bruised and scratched, and "her ear is all swollen where he pulled an earring out of her ear." The State further explained to the jury they would see photos of the injuries. The State then moved to the second incident, explaining that Moreno, while staying at his ex-wife's house, became intoxicated and belligerent, and proceeded to "rain blows down upon [Almendarez]." The State described how, when Julissa attempted to call the police, "he shoves her, smacks her in the face."

Moreno's trial counsel stated the case would show "things aren't always as they appear." Referring to the incident with Almendarez, counsel asked "is it possible that an ex-spouse can say

something that's not true about another spouse, a former spouse?" Discussing Rodriguez's credibility, counsel referred to her as a "troubled soul."

During closing arguments, the State reiterated the general instructions in the jury charge. The State clarified how the "or" distinction in the portion of the charge involving Rodriguez means either striking with the hand or kicking with the foot, and reminded the jury that voluntary intoxication is not a defense. Moreno's trial counsel then emphasized the reasons to doubt Rodriguez's testimony, including possible benefit to her pending case and prior prostitution charges. Trial counsel emphasized the lack of visible injuries in the photographs of Julissa and Almendarez, stating "there is no credible evidence of a physical argument." In rebuttal, the State criticized the defense for arguing Rodriguez was benefiting from her testimony while arguing she recanted her testimony at the same time. He reminded the jury they only had to be unanimous "on the fact that two different assaults occurred and that they are in the family and/or dating relationship." Regarding "dating relationship," the State argued it was undisputed that "they are clearly dating each other." This was the only reference to "dating relationship" throughout the trial. Regarding "family," the State further argued it was undisputed that "Dora is the mother of his child" and "Julissa is his daughter."

**Discussion**

Although the complained-of omission of the definition of "dating relationship" from the jury charge was erroneous, Moreno was not egregiously harmed by the lack of the definition. "Dating relationship" is defined as a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature. *See* TEX. FAM. CODE ANN. § 71.0021 (West Supp. 2015). The existence of such a relationship is determined based on consideration of (1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency and type of interaction between the persons involved in the relationship. *Id.* There is nothing in the record

to indicate that the jury was misled or left ignorant of how the term "dating relationship" was to be applied in evaluating the evidence. *See Villanueva v. State*, 194 S.W.3d 146, 158 (Tex. App.—Houston [1st Dist.] 2006), *rev'd on other grounds*, 227 S.W.3d 744, 749 (Tex. Crim. App. 2007) (holding that the context in which the term "deadly weapon" was used in the jury charge adequately conveyed to the jury the meaning of the term); *cf. Mosley v. State*, 686 S.W.2d 180, 182 (Tex. Crim. App. 1985) (finding the omission of the legal definition of "bodily injury" was harmless error where no issue was presented that bodily injury was in dispute or that there was any confusion about what was meant by the term).

The evidence Rodriguez and Moreno were dating is undisputed. Officer Gallardo testified without objection that when she responded to the first assault, Rodriguez stated she had been assaulted by her boyfriend. Moreno was referred to as Rodriguez's boyfriend at various times throughout the proceedings, and Rodriguez testified about her relationship with Moreno, stating the two had been dating since 2012 and that they have three children together. Almendarez further testified that she was aware that Moreno and Rodriguez were dating. The State also emphasized the nature of the relationship between Moreno and Rodriguez during its closing. Given this testimony, we do not conclude the jury was misled in any way by the omission of the definition of "dating relationship."

After examining the record of the case in light of the disputed issue and argument presented, we conclude the omission of the definition of "dating relationship" from the jury charge in this case does not rise to the level of egregious harm. Accordingly, we overrule Moreno's sole issue on appeal.

### CONCLUSION

Because the omission of the statutory definition of "dating relationship" in the jury charge did not result in egregious harm, the judgment of the trial court is affirmed.

Irene Rios, Justice

DO NOT PUBLISH